**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Criminal Case No. 12-cr-00409-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

GLEN EARL COTONUTS,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

---

This matter is before the Court on Defendant Glen Earl Coconuts' Motion for New Trial (Doc. # 66). For the following reasons, the motion is denied.

## I.  BACKGROUND

On October 1, 2012, Cotonuts was indicted on charges that he failed to register as a sex offender and update his registration in violation of 18 U.S.C. § 2250(a). (Doc. # 1.) Trial began on September 30, 2013, and the case was submitted to the jury at 3:00 p.m. on October 2, 2013. The jury resumed its deliberations the following day and at around 2:35 p.m. sent a note to the Court asking:

> What do we do if 11 jurors are at one conclusion an[d] 1 juror has come to a different conclusion?

Without contacting counsel for either party, the Court responded to the question:

> In the instructions I told you not to disclose to anyone, including me, how the jury stands, numerically or otherwise.  Please send me a new note that does not disclose the numerical vote at this time.

The Court provided no further instruction and received no further communication from the jury until 3:51 p.m., at which time the jury indicated it had reached a verdict.

The Court summoned the government and defense counsel and explained on record that while the jury indicated it had reached a verdict, there was a previous note. The Court showed both parties a copy of the jury note and the Court's response to that note.  The court explained that it thought it improper to divulge the count so it provided a response to the note anticipating a new revised jury note without the standing, which the Court would then share with the parties.  However, the jury never sent back a revised note.  The Court then asked both parties whether they wanted to make a record regarding the actions taken by the Court.  The government stated on the record that it had no objection to the Court's interactions with the jury.  Defense counsel stated "Your Honor, we won't make any further record at this point."  Having heard no argument regarding the jury note, the Court brought the jury into the courtroom.  The jury unanimously found Mr. Cotonuts guilty.

Mr. Cotonuts filed the instant motion for new trial on October 17, 2013.  (Doc. # 66.)  The government responded on November 19, 2013, to which Mr. Cotonuts replied on December 2, 2013.  (Doc. ## 70, 72.)

2

## II.  LAW AND ANALYSIS

A defendant in a criminal case has a fundamental right, protected by the Fifth and Sixth Amendments of the United States Constitution, to be present at all formal proceedings related to the charges brought against him and where the jury is present. *See Shields v. United States,* 273 U.S. 583, 588–89 (1927) ("the rule of orderly conduct of jury trial entitling the defendant, especially in a criminal case, to be present from the time the jury is impaneled until its discharge after rendering the verdict."); *see also Illinois v. Allen,* 397 U.S. 337 (1970); *Snyder v. Massachusetts,* 291 U.S. 97, 114 (1934).  This right was codified in Federal Rule of Criminal Procedure 43(a), which provides in pertinent part, "The defendant must be present . . . at every stage of the trial, including jury impanelment and the return of the verdict . . . ."  The "right to be present" has been interpreted to require "that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds."  *United States v. Ronder,* 639 F.2d 931, 934 (2d Cir. 1981) (citing *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)).

In the instant case, the government concedes and the Court agrees that its communication with the jury constituted error.  The question then becomes whether such error was harmless.  Mr. Cotonuts contends that this Court must apply a harmless beyond a reasonable doubt standard.  However, even the principle case Cotonuts relies upon states, "It is well settled . . . that an *ex parte* communication by a judge to a jury in response to a jury inquiry may be considered harmless error where the communication

3

cannot be said to have prejudiced the defendant." *United States v. Mejia*, 356 F.3d 470, 476 (2d Cir. 2004) (citing *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994)); *see also United States v. Harris*, 491 F.3d 440, 451 (D.C.C. 2007); *United States v. Kelley*, 187 F. App'x 876, 883 (10th Cir. 2006) (order and judgment).  Thus, courts consider whether a judge's *ex parte* response to a jury note could be "fairly construed as coercing the jurors to resolve differences among themselves [that] they had expressly concluded to be irresolvable." *Mejia*, 356 F.3d at 477 (citing *United States v. Blackmon*, 839 F.2d 900, 915 (2d Cir. 1988)).

Relying on *Mejia*, Cotonuts argues that this "Court's unilateral response to the jury is prejudicial . . . because it: (1) *sua sponte* induced further jury deliberations; (2) could have conveyed the impression that the Court favored conviction; and (3) could have had a belittling effect on the hold-out juror."  The Court disagrees that this is a fair reading of its response to the jury's note and thus, although it is true that *Mejia* is factually similar, the instant case presents an important distinction.  In *Mejia*, the court responded to a jury note by sending back a copy of the jury instructions having marked with a highlighter instructions that the jury should not report how the vote stands until the panel is in open court.  356 F.3d at 473.  Beyond this admonishment, the court provided no further instructions to the jury for how it should proceed.  *See id.* Conversely, here, the Court specifically instructed the jury to send out a new note that did not disclose its numerical division.  *See Kelley*, 187 F. App'x at 883 (recognizing that the Mejia court simply rebuked the jury and "did not provide further guidance").

4

This additional instruction provided context that was absent from the factual scenario of *Mejia* where the Second Circuit determined that the trial court in effect directed the jury to continue deliberations.  356 F.3d at 477.  Rather than coercing the jury to continue deliberating, the communication here asked that the jury correct its prior mistake and send out a note so that the Court could appropriately respond.  Implicit in the Court's response which instructed the jury to send out a new note is a promise that the Court would respond substantively to the panel's concern in a way that was consistent with the jury instructions, which informed the jury that the Court would have to call in the parties and hear arguments on any jury inquiries.  Thus, although it was error to engage in an *ex parte* communication and now the Court has learned that a better practice would have been to redact the count from the note and call in the parties, a mistrial is not warranted under the specific circumstances of this case.

An additional important factual distinction is that in *Mejia*, the jury was in fact deadlocked.  The *Mejia* jury had been unable to come to a unanimous decision for three days, repeatedly sent deadlock notes to the judge, and had already received a supplementary instruction encouraging unanimity.  *See Mejia*, 356 F.3d at 472-43.  Under those circumstances, the Second Circuit determined that the trial court's "failure to respond to the report of deadlock . . . in effect directed the jury to continue deliberations . . . [and] may have induced unanimity."  *Id*. at 477 (internal quotation marks omitted).  In the instant case, there were no prior communications from the jury in which it expressed an inability to reach a unanimous decision.  Consequently, the

content of the communication was different from that in *Mejia*, as was the severity of

the possible deadlock.  *See Harris*, 491 F.3d at 451 (distinguishing *Mejia* and finding

a communication harmless in part because "precedents about how to instruct a

deadlocked jury do not control where the jury was neither deadlocked nor instructed

as to deadlock.")  Accordingly, Cotonuts was not prejudiced by the communication

and a new trial is not warranted.  *See Kelley*, 187 F. App'x at 883.

### III. **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendant's Motion for New Trial

(Doc. # 66) is DENIED.

DATED:  December __09__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

6